MIGUELINA RODRÍGUEZ ESPINOSA, Plaintiff and Appellant, *v.* RAMONA DÍAZ, Defendant and Appellee.

No. 9052. Argued April 6, 1945.—Decided July 12, 1945.

---

*Géigel & Silva* for appellant. *Fernando Ruiz Suria* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

Appellants legitimate father contracted marriage with his first cousin, appellee herein, on July 26, 1913, without having previously obtained dispensation from the district court and without appellee's father having granted the authorization required to contract marriage inasmuch as at that time she was only 20 years of age. They continued to live together after appellee became of age, without any attack having been brought against the marriage which was later dissolved by the death of appellant's father, who left some property and as his only descendants the appellant and her brother of the whole blood.

Based on the foregoing facts, the lower court rendered judgment dismissing the complaint, on the ground that the marriage in question was not void but merely voidable, and that it could not be annulled after the death of one of the contracting parties.

In the article on marriage published in the *Enciclopedia Jurídica Española* invoked by the lower court, it is stated:

"Our lawmakers confined themselves to enumerating the cases of nullity of marriage, without making any distinction between those which, by reason of their being actually null, have no legal existence, and those which were merely voidable—an essential difference as to the effects produced by both. So it is incumbent upon the courts and text writers to establish the distinction between the two cases." Vol. 21, p. 858.

In fact, this court, in *Cintrón* v. *Román,* 36 P.R.R. 437, decided that where a woman married within 301 days after being divorced, notwithstanding the cause of incapacity con-

tained in subdivision 6 of § 70 of the Civil Code,[1] the marriage was not void *ab initio,* and that since the woman had no children until two years after the second marriage the legal reason for the annulment, that is, the confusion that might arise in respect to the paternity of the offspring had ceased, and, therefore, the marriage which at its inception was merely voidable was validated when the 301 days counted from the judgment had expired without any children having been born. That case was distinguished from *Cabassa* v. *Nadal,* 23 P.R.R. 691, where the marriage was annulled. In the *Cabassa* case the action for nullity was brought by the wife during the life of the parties, within 301 days after a divorce had been decreed. Lastly, in *Just* v. *Just et al.,* 32 P.R.R. 229, where the complaint was based on the ground that the husband was not only impotent but of insufficient mental capacity, it was stated by this court, at p. 232:

"We are inclined to hold, without more, that a contract of marriage merely voidable may be continued or ratified by the acts of the parties, provided they are *sui juris,* as intimated in our original opinion. The wide power of Section 179, by including the *fiscal* tends to show that the nullity to be sought was of a public order. When two persons who are of age and of sound mind, have contracted no previous marriage, and nothing else has occurred which would void the marriage *ab initio,* the continuance of the marriage, if voidable, is a matter between the parties and, like other contracts, subject to confirmation, ratification, or the like.

"Looking again at Sections 130 *et seq.,* it will be seen that the incapacity referred to will sometimes make a marriage void *ab initio* and at other times merely voidable. By specific provisions therein parties in certain cases may ratify the marriage or renounce their rights. A minor who marries without the consent of his parents may ratify the marriage on coming of age. The pupil, too,

---

[1] Subdivision 6 of § 70 of the Civil Code (1930 ed.) reads as follows:

"A widow during a period of three hundred and one days after the death of her husband; or before a child is born, if she is pregnant at the time of such death; and a woman whose marriage has been declared null or has been dissolved, during a like period of time commencing from the date of such nullity or dissolution."

who marries her tutor before his accounts have definitely been approved, etc., may likewise ratify when she comes of age. In the case of *Ledesma v. Agrait,* 19 P.R.R. 549, we similarly held that the provisions of Section 1362 permitted the ratification of contracts which observed the external form of Section 1228.

"But the principal consideration on which we decide this case is that complainant-appellee has shown no such interest as would entitle him to an action. For this branch of the discussion Section 179 may be supposed to refer to any kind of incapacity."

We must now determine whether the marriage contracted by a woman 20 years of age without her father's authorization is void *ab initio,* and if it is merely voidable, whether it was validated by the fact that on reaching her majority she continued to live with her husband without assailing the validity of the marriage, and whether the marriage between first cousins without dispensation is void *ab initio* or merely voidable.

I

■ The fact that appellee contracted marriage without her father's authorization, when she was only 20 years of age, clearly makes the marriage voidable, as by way of *dictum,* we said in *Just v. Just, supra.* The alleged incapacity is not of such a kind as to be contrary to good morals and once she reached her majority and continued to live with her husband without challenging the validity of the marriage, no reason of public policy may be adduced to prevent its confirmation. Sections 1262, 1263, and 1265 of the Civil Code.

■ If we could divest marriage of its character as a civil institution,[2] and consider it as a mere contract, it would

---

[2] Section 68 of the Civil Code (1930 ed.) reads as follows:

"Marriage is a civil institution, originating in a civil contract whereby a man and a woman mutually agree to become husband and wife and to discharge toward each other the duties imposed by law. It is valid only when contracted and solemnized in accordance with the provisions of law; and it may be dissolved before the death of either party only in the cases expressly provided for in this code.

prove an easy task to determine between void and voidable marriages. It would be sufficient in each case to decide if the elements required for the validity of marriage [3] were present, because if they were, then the marriage would not be void. There would be no room for doubt, from the contract's point of view, that a marriage between first cousins, without dispensation, would not be void, as the legal capacity of the contracting parties, their consent, and the authorization and celebration of the marriage according to the forms and solemnities provided by law would coexist. But marriage is not a mere contract. It is a civil institution which because of the important role it plays in civilized society, the State has a deep interest in regulating it, and to that end it has imposed certain impediments to contract it, among which, there is included the prohibition to collaterals by consanguinity within the fourth degree. However, as to collaterals by consanguinity in the fourth degree, § 133 of the Civil Code (Comp. Stat. 1911), at the time marriage in this case took place, provided that on petition of an interested party, the district courts, for just cause, might waive the fourth degree of consanguinity. Subsequently, § 133 (§ 72 of the 1930 ed.) was relaxed to such an extent that, in certain cases, marriage may be contracted without dispensation.[4]

When the Legislative Assembly authorized the marriage, between first cousins having legal capacity to contract marriage, provided they first obtain the required dispensation,

---

[3] Section 69 of the Civil Code (1930 ed.) provides:

"The requisites for the validity of a marriage are:

"1. The legal capacity of the contracting parties.

"2. Their consent.

"3. Authorization and celebration of a matrimonial contract according to the forms and solemnities prescribed by law."

[4] See § 72 (1930 ed.), as amended by Act No. 42 of April 22, 1942, and specially the amendment of said Section by Act No. 15 of April 7, 1945. Under the latter Act, dispensation could be waived (a) when first cousins had lived in concubinage and children were born as a result of that union, and (b) when while living in concubinage, even if there were no children, one of them was in imminent danger of death.

and have given their consent and have complied with all the forms and solemnities prescribed by law; when it has even gone so far as to eliminate the requisite of the dispensation where the parties have lived in concubinage and as a result of that union children are born, or even without children, when one of them should be in imminent danger of death, are we warranted to state that our Legislature regards marriage between first cousins without dispensation so contrary to good morals and public policy[5] that the courts should consider it void and not merely voidable? On the contrary, questions of public policy, such as the legitimacy and the hereditary rights of the children,[6] who are not responsible for their parents' negligence in failing to obtain the dispensation, demand that marriage should not be declared void except for cogent reasons. It is true that in the present case there were no children, but if we should decide that

---

[5] Physiological reasons are advanced to discourage marriage between first cousins, but that said marriages are not in contravention of good morals and public policy is shown by the fact that they are authorized, without dispensation, in the following jurisdictions: Argentina, *Ley Sobre Matrimonio Civil*, Art. 9; Cuba, Civil Code, Art. 84; Spain, Civil Code, Art. 84; Perú, Civil Code, Art. 83; German Civil Code, 1907, Art. 1310; California, Civil Code, Art. 59; Connecticut, Gen. Stat. (1930 ed.) Sec. 5148; Delaware, Rev. Stat. (1915 ed.) Sec. 2992; Hawaii, Rev. Law (1945 ed.) Chap. 301, Sec. 12351; Idaho, Civil Code (1908 ed.) Sec. 2615; Maine, Rev. Stat. (1916 ed.) Title V, Chap. 64, Sec. 1; Massachusetts, Gen. Laws (1932 ed.) Title III, Chap. 207, Sec. 1, 2; Mississippi Code, 1942, Chap. 4, Sec. 458; Nebraska, Rev. Stat. (1913 ed.) Sec. 8760; and North Carolina, Revisal of 1905, Sec. 2083.

[6] It was unfortunate that our Civil Code did not adopt § 69 of the Spanish Civil Code which provides:

"A marriage contracted in good faith produces civil effects, although it may be declared void.

"If good faith existed on the part of only one of the spouses it shall produce civil effects only with regard to such spouse and to the children.

"Good faith is presumed if the contrary is not shown.

"When bad faith has existed on the part of both spouses, the marriage shall produce civil effects only with relation to the children."

The Civil Code of Louisiana to that same effect provided in its § 118:

"If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor and in favor of the children born of the marriage."

this marriage is *ab initio* void, we would have to apply the same rule to a marriage where there has been issue, and the effects of such a decision would certainly be disastrous. It is for these reasons that civilized nations look with disfavor on the harsh doctrine of *ab initio* nullity of marriages. *In re Guthery's Estate,* 226 S. W. 626, 627.

Dealing with the requisite of dispensation for first cousins prescribed by the Spanish Code, it is stated in the aforesaid article in the *Enciclopedia Jurídica Española,* pp. 847–848: "The application of this prohibition to collaterals in the fourth degree is not so justified." To that same effect León Bonel y Sánchez, in his work *Código Civil Español, Comentado y Concordado,* vol. 1, p. 175, states that the impediments for relations by consanguinity should be limited to very few cases, and they should only prevail in very special circumstances.

In Louisiana, where first cousins are forbidden to contract marriage with each other —§ 95 of the Civil Code— it has been held that a marriage thus contracted is void *ab initio. Chandler* v. *Hayden,* 105 So. 80 (La., 1935). This case is easily distinguishable from the one at bar, for in Louisiana there does not exist, as in Puerto Rico, the statutory provision which authorizes first counsins to contract marriage with dispensation and in certain cases without it. There the Legislature clearly expressed its intention that marriages between collaterals by consanguinity within the fourth degree did not produce any legal effect. In order to make its intention more plain, it expressly provided in said § 95 that marriage contracted in contravention of said provision in another State by citizens of Louisiana, without first having acquired a domicile out of this State, shall have no legal effect in this State.

## III

■ Appellant argues that, as § 275 of the Penal Code provides that persons being within the degrees of consan-

guinity within which marriages are declared void by law, who intermarry, or who commit fornication or adultery with each other, are punishable by imprisonment in the penitentiary not exceeding 10 years; and as the Civil Code prohibits marriage between first cousins, this marriage according to the rule prevailing in the United States, is considered incestous and absolutely void. See Monographs in L.R. A. 1916-A, pp. 723, 727, and 76 A.L.R. 769.

If we should consider § 275 of the Penal Code by itself, without taking into account its antecedents or without considering the absurdity of construing it in the sense that marriages which in certain cases may be legally contracted without dispensation should become incestuous in the absence of the paternal dispensation, we will have to agree with the appellant that the marriage in this case is void *ab initio*. But § 275 of the Penal Code was taken from § 237 of the California Penal Code; and as in California, pursuant to § 59 of the Civil Code, first cousins may freely contract marriage without the need of dispensation, said marriage does not constitute an offense in that State. But, as we have already seen, § 71 of the Civil Code of Puerto Rico, derived exclusively from the Spanish Code, forbids marriage between first cousins, unless dispensation is obtained under § 72 of the same Code. The meaning of incestuous carries with it the idea of being immoral and contrary to public policy and it would be preposterous to assert that a marriage which the law itself considers immoral and against public policy, could be sanctioned and authorized by merely obtaining a dispensation from a district court, or even without obtaining it, where children were born out of the marriage. In other words, the dispensation of the district court, the birth of children, or the fact that one of the parties is in imminent danger of death, will render innocent a relation which, according to § 275 of the Penal Code, if construed in the manner alleged by appellant, would be an offense punishable by imprisonment in the penitentiary for a maximum term of 10

years. It could not have been the intention of the lawmaker when adopting § 275 of the California Penal Code, that the marriage contracted between first cousins, even without dispensation, should be considered as constituting the offense of incest.

A similar situation arose in the State of Louisiana. Originally § 95 of the Civil Code authorized first cousins to contract marriage without dispensation. A law had been enacted in 1884 in said State which provided that those who knowingly intermarry or cohabit without marriage, being within the degrees of consnguinity within which marriage is prohibited by §§ 94 and 95 of the Revised Civil Code of the State of Louisiana, shall be deemed guilty of incest. In 1900 § 95 of the Civil Code was amended and under this amendment marriage between first cousins was prohibited. The defendant was charged with having contracted marriage with his first cousin and it was alleged that this marriage was contrary to the Act of 1884, inasmuch as by virtue of § 95 of the Civil Code, as amended in 1900, marriage between first cousins was prohibited. It was stated therein that the mere prohibition of marriage does not create the offense of incest and since criminal statutes must be strictly construed and can not be extended by implication to embrace other cases not within their plain terms, it was held that the charge made did not constitute the crime of incest. *State* v. *Couvillion*, 42 So. 431 (La. 1906).

Since the marriage thus contracted does not constitute the crime of incest and it being, on the contrary, merely voidable, its nullity can not be sought after the death of one of the contracting parties. *Cintrón* v. *Román*, 36 P.R.R. 437; *In re Guthery's Estate, supra,* p. 627.

For the foregoing reasons the judgment appealed from should be affirmed.[7]

---

[7] Despite the importance of the questions involved in this case, we have not had the benefit of appellee's brief, even though an extension was granted to her attorney to file it.